## LAWRENCE SAVINGS AND LOAN CO v

## BOWMAN et

Ohio Appeals, 4th Dist, Lawrence Co

Decided June 1, 1932

194

A. J. Layne, Ironton, and Irish & Riley, Ironton, for trustee.

Andrews, Edwards & Andrews, Ironton, for mortgagees.

**MAUCK, PJ.**

Upon the issue made by Mrs. Lynd it is sufficient to say that the evidence does not support her contention. The extension of time granted the debtors was a sufficient consideration for the notes signed by her.

The first question that arises upon the principal issue in the case involves the power of the trustee in bankruptcy to have adjudicated in this case the question raised by him. The record shows that neither the partnership of Bowman and Lynd nor E. P. Bowman, one of the partners, was adjudged a bankrupt. The proceeding was in-

stituted by E. L. Lynd, one of the partners, but acting individually. The liabilities scheduled by him were partnership liabilities. The real estate in controversy was partnership property. While it is clear that the one partner could not cast the partnership into bankruptcy, and did not attempt to do so, he did by filing his individual petition make it possible for the partnership property to be administered in bankruptcy. Paragraph "c" of §5 of the bankruptcy law reads thus:

"c. The court of bankruptcy, which has jurisdiction of one of the partners, may have jurisdiction of all the partners and of the administration of the partnership and individual property."

The last paragraph of that section reads as follows:

"h. In the event of one or more but not all of the members of a partnership being adjudicated bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but said partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit, and account for the interest of the partner or partners adjudged bankrupt."

When E. L. Lynd filed his individual petition in bankruptcy the administration of the partnership property was dependent upon the election of Bowman, the other partner. He gave his express consent for the administration of the partnership property in bankruptcy. While we find no express adjudication of the term "administer" it can only mean that when the non-filing partner consents thereto the assets of the partnership shall be as fully under the control of the bankruptcy court as though the partnership itself had filed a petition in bankruptcy.

It follows, therefore, that the bankruptcy court acquired the same jurisdiction over the property in question that it would have had if the partnership itself had gone into bankruptcy, and that its trustee has the same duty to realize upon the assets of the partnership as he would have had if he were the trustee of the partnership itself.

At the time Lynd filed his petition in bankruptcy the petition in foreclosure had already been filed by the plaintiff. Inasmuch as there was no question of the validity of the savings and loan mortgage it is hardly likely that the federal court would have undertaken jurisdiction as against the previously acquired jurisdiction of the state

court even if a timely effort of that kind had been made. In any event, the trustee elected to pursue his rights in the case pending in the state court and his right to maintain his cross petition is clear.

The second question is whether or not under the testimony in this case the trustee has by the evidence shown himself entitled to the relief sought. According to the first paragraph of Section 60 of the bankruptcy act a preference has been given if an insolvent debtor within four months before the filing of the petition in bankruptcy has made a transfer of his property if the effect of such transfer is to enable any one of his creditors to obtain a greater percentage of his debt than other creditors of the same class. In this case the partnership was insolvent and it did transfer its property by giving the mortgage in question within four months prior to filing the petition. The preference, however, is unlawful and can be avoided by the trustee under the provisions of the second paragraph of Section 60 only if it be shown that

"the person receiving it or to be benefitted thereby, or his agent acting therein, shall then have reasonable cause to believe that * * * the enforcement of such transfer would effect a preference."

Upon the first branch of this question there can be no contention. If the mortgagees are permitted to realize on their mortgage and receive the $1210.30 left over after the payment of the plaintiff's mortgage a preference to them will be accomplished because they will thereby receive a greater percentage of their debt than other creditors of the same class, that is, of the same class at the time the mortgage was given.

The second question, that is, whether these mortgagees had reasonable cause to believe that the mortgage when taken by them would effect a preference, is more difficult because it must necessarily be shown by indirect evidence. When this mortgage was given on March 24 the mortgagees knew that their debtors had at least $4,000 of outstanding debts to other jobbers and that some of these creditors were pushing them for payment. They knew that the debtors' stock of goods had run low, that their credit was exhausted, the stock was constantly running down and that one of the partners had quit the store to make his living elsewhere, and had quit under such circumstances as to show that he did not look upon the store as having anything therein of value to him. The mortgagees further knew that their accounts against these debtors

had been running for at least six months without any substantial credits thereon, and they were refusing to deliver any further goods to the debtors except for cash. Moreover, the mortgagees twenty days before they took this mortgage had required the debtors to make a customers' credit report. This report was necessarily inaccurate at best because Mr. Lynd in making it stated to mortgagees' agent that Bowman was more familiar with the figures than he. The statement, however, showed liabilities on open accounts of $4,000, against which there was merchandise of $1,500, notes of $250 and cash of $5, and a claim of $6,000 on running accounts. There was a further item in the report that the debtors had $13,000 of real estate with a mortgage of $3,300. This statement, so far as it related to the real estate, was absurd. The only partnership real estate was the store building subject to the mortgage of $3,300, out of which arises the equity of $1210.30 that constitutes the basis of this law suit. The other real estate consisted of property occupied by the debtors as residences and owned by their wives. If any sort of good faith could be attributed to this credit report it would appear that the debtors had over $17,000 of assets and owed only $4,000 of indebtedness. If it had been believed and relied upon by the mortgagees, or if it had been taken for the purpose of being believed and being relied upon and in an honest endeavor to determine whether the debtors were entitled to credit, the mortgagees would have ascertained whether the $6,000 of running accounts were worth anything like their face value or whether they would eventually only bring something like $80, as they did in the bankruptcy proceeding. The mortgagees would further have ascertained that the statement with relation to the real estate was erroneous and that only a meager equity subsisted therein for the creditors of the partnership. What followed, however, was this: The mortgagees did not undertake to check the accuracy of the report. They did not sell any additional goods to the partnership nor extend them any further credit, nor release them from the embargo that required cash to be paid if goods were delivered. On the contrary, they followed up this report by a demand for a mortgage. No direct, unequivocal threats to bring suit were made to induce the execution of the mortgage but one was implied. The debtors were told "You sign this mortgage and then we will give you a longer time. We want to be secured." The necessary implication was that if the mortgage was not signed the debtors would not be given a longer time and suit would be instituted. Again, the record shows that the debtors were told that if the mortgage was not given "they'd have to go down town and make other arrangements." To this one of the debtors replied "I'd rather do anything than be sued." There was nothing wrong in a threat on the part of the mortgagees to sue their debtors then long in default but they tell us that their policy was never to sue any customers "only when they are dangerous or very bad accounts."

From all of this it must be concluded that the mortgagees looked upon this account as a dangerous one and, of course, subsequent events justify that view. All these facts lead us to the conclusion that it was the purpose of the agent of the mortgagees in securing this credit report to have a statement that would bolster up the mortgage which they expected to get. That is the only office that the report has ever served and that must have been the purpose in securing it. The testimony as a whole convinces us that when the mortgage was taken the persons benefitted thereby had reasonable cause to believe that they would by realizing upon the mortgage obtain a greater percentage upon their debts against Bowman and Lynd than other creditors would receive. This being true, the mortgage is void as against the trustee in bankruptcy and a decree will be entered accordingly.

MIDDLETON and BLOSSER, JJ, concur.